IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Aryee Henderson, | Case No. 4:23-cv-05280-SAL-TER |
| Plaintiff, | |
| v. | **ORDER** |
| Nurse Scott and Nurse Gregg, | |
| Defendants. | |

The matter is before the court United States Magistrate Judge Thomas E. Rogers, III's Report and Recommendation recommending the court grant defendant Nurse Kiki Gregg's motion for summary judgment, ECF No. 47 (the "Report"). For the reasons below, the court adopts the Report, ECF No. 106, in full.

## BACKGROUND

Henderson is currently incarcerated with the South Carolina Department of Corrections and housed at the Lee Correctional Institution ("Lee CI") within the South Carolina Department of Corrections ("SCDC"). One morning in April 2023, while Henderson was in lockdown, Nurse Gregg went to the F-1 B-wing to issue the morning pill-line medications. [*See* ECF No. 1-1 at 5, ¶ 30.] At the time, Gregg was employed by MedFirst Staffing, LLC, not SCDC, as a licensed practical nurse ("LPN") at Lee CI. [ECF No. 47-2, Gregg Aff. ¶¶ 2, 4.] When Gregg reached Henderson's cell door, Henderson showed her a handful of pills and stated he was "feeling suicidal/homicidal" and asked her to contact medical personnel. [ECF No. 1-1 ¶ 32.] Henderson did not swallow any pills in Gregg's presence. *Id.* ¶¶ 45–45. Instead, he hoped that showing Gregg the pills would prompt her to report his condition to medical personnel so he could be placed

1

on crisis intervention and transferred to a different facility. *Id.* ¶ 38. Gregg allegedly responded "that was not her job and she was not gonna do it." *Id.* ¶ 33. Henderson also alleges Gregg never informed medical personnel or supervisory staff of his suicidal ideations. *Id.* ¶¶ 36, 40. However, Gregg attests she *did* report the incident to security staff and SCDC's charge nurse on duty at 10:00 a.m. on April 9, 2023. *See* Gregg Aff. ¶ 6. SCDC records corroborate her account, stating that the "West pill room nurse called charge nurse to report that she observed inmate with a hand full of pills stating that he would take them. Nurse states that she notified officers but nothing was done." [*See* ECF No. 47-3 at 15.] Gregg further attests that "[a]s an LPN, [she is] not authorized or qualified to direct other medical providers at SCDC to provide any particular level of treatment to an inmate/patient." Gregg Aff. ¶ 7.

Henderson claims he experienced paranoia, post-traumatic stress disorder ("PTSD"), suicidal ideations, restlessness, lack of appetite, and mental anguish, and that he heard voices as a result of Gregg's alleged failure to notify medical personnel. *Id.* ¶ 50.

Henderson brings a single claim against Nurse Gregg for deliberate indifference in violation of the Eight Amendment. [*See generally* ECF No. 1; ECF No. 1-1.] Gregg moved for summary judgment. [*See* generally ECF No. 47.] Henderson failed to timely reply to the motion, and the magistrate judge issued his Report on October 22, 2024. [ECF No. 106.] Henderson belatedly filed an opposition to the motion a few weeks later, *see* ECF No. 108, prompting Gregg to file a reply. [ECF Nos. 113[1], 115.] Henderson also filed his objections to the Report a few months later. [ECF No. 121.] Additionally, he filed a motion to extend his time to appeal and

---

[1] The court grants Gregg's motion to file a reply out of time, ECF No. 113.

appealed two of the magistrate judge's non-dispositive orders while Gregg's motion was pending. [*See* ECF Nos. 93, 96.] The matters are fully briefed and ripe for resolution by the court.

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* Thus, "[a]n the absence of *specific* objections . . . this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009).

Because Plaintiff is proceeding pro se, the court is charged with liberally construing the pleadings to allow him to fully develop potentially meritorious claims. *See Cruz v. Beto*, 405 U.S.

319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). That said, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

## DISCUSSION

The court addresses the Report and Henderson's appeals below.

### I.     Report, ECF No. 106

The magistrate judge recommends the court grant Nurse Gregg's motion and dismiss Henderson's claims against her on the grounds that the evidence does not support Henderson's claim, even when viewed in the light most favorable to Henderson. [*See generally* ECF No. 106 at 12–14.] Henderson objects, arguing he suffered a serious medical need after his encounter with Gregg, he was not given the opportunity to speak with medical personnel *the next day*, and Gregg should have ordered him to be placed in a designated crisis intervention cell. [*See generally* ECF No. 121 at 3–4.] After carefully reviewing the Report, the record, and Henderson's objections, the court overrules the objections and adopts the Report in full for the reasons below.

The Eighth Amendment requires the government to provide medical care to incarcerated individuals. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). However, a prison official violates the Eighth Amendment only when the prison official is "deliberately indifferent" to a serious medical need. *Id.* at 105. "Mere negligence" is insufficient to establish deliberate indifference. *Stevens v. Holler*, 68 F.4th 921, 933 (4th Cir. 2023) (quoting *Estelle*, 429 U.S. at 103–04). Instead, the conduct "'must be so grossly incompetent, inadequate, or excessive as to shock the conscience or

be intolerable to fundamental fairness.'" *Id.* (quoting *Miltier v. Beorn*, 896 F.2d 841, 851 (4th Cir. 1990), *overruled on other grounds Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124 (4th Cir. 2020)).

An inmate must satisfy two requirements to establish a deliberate indifference claim: he must show (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation and quotation marks omitted). This requires the inmate to make an *objective* showing of a serious medical need and a *subjective* showing that the defendant was deliberately indifferent to that medical need. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Iko*, 535 F.3d at 241). Showing the prison official had a culpable state of mind, on the other hand, requires the inmate to meet a "very high standard," and "a showing of mere negligence will not meet it." *Young v. City of Mount Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001) (internal citation and quotation marks omitted). Rather, the inmate must "show[] that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." *Id.* at 576. Put differently, the inmate must show "either actual intent or reckless disregard," and that the defendant's actions are so "grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable fundamental fairness." *Aten v. Richland Ctny.*, Case No. 5:16-cv-03614-PMD-KDW, 2018 WL 4560572, at *6 (D.S.C. July 3, 2018), *report and recommendation*

*adopted*, 2018 WL 4109608 (D.S.C. Aug. 29, 2018), *aff'd sub nom Aten v. Wiggins*, 839 F. App'x 798 (4th Cir. 2021).

Assuming without deciding that Henderson had a serious medical need, the court finds no evidence Gregg acted with deliberate indifference. The court here emphasizes Gregg did, in fact, report Henderson's statement about intending to take a handful of pills to both the charge nurse and security officers. *See* Gregg Aff. ¶ 6. Not only is Gregg's testimony supported by SCDC's administrative records, *see* ECF No. 47-3 at 15, Henderson does not dispute, much less refute, this testimony. Instead, he argues she was required to order his placement in a crisis intervention cell pursuant to SCDC policy. [*See* ECF No. 121 at 4–5.] In support of this assertion, Henderson cites a 2010 SCDC policy. *See id.* at 33. That policy states that if an inmate is exhibiting suicidal behavior or signs the nursing staff "will order" the inmate be placed in a designated crisis intervention cell. *See id.*

Even construing the evidence in the light most favorable to Henderson, the evidence suggests Gregg was negligent at most. As noted above, the subjective component of the court's analysis "sets a particularly high bar to recovery," as "[a]n officer is deliberately indifferent only when [s]he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." *Iko*, 535 F.3d 241 (citing *Brennan*, 511 U.S. at 837); *see also Ruefly v. Landon*, 825 F.2d 792, 793 (4th Cir. 1987) (the "relevant question" is whether the plaintiff alleges the defendant "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm . . . ."). Here, the undisputed evidence shows Gregg reported Henderson's statements to both officers and the charge nurse. *See* Gregg Aff. ¶ 6. Furthermore, even if SCDC's

6

2010 policy applied in April 2023 and Gregg somehow violated it, such a violation would at most constitute negligence and not the deliberate indifference required for an Eighth Amendment claim.

Additionally, a successful deliberate indifference claim requires evidence of a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014). Henderson argues he was not given access to mental health counselor on the day of or the day after his interaction with Gregg. [*See* ECF No. 121 at 5–6.] That may be true. But SCDC's records show, and Henderson does not dispute, that he had a session with a qualified mental health professional on April 11, 2023. [*See* ECF No. 47-3 at 9.] During that session, the professional diagnosed Henderson with "major depression," but nothing in the records suggests Henderson's depression stemmed from any action *Gregg* took. Instead, Henderson identified factors such as an inability to deal with "his current situation," the lack of a job, an inability to take care of himself, and not having support from family and friends. *Id.* at 12. While Henderson generally *alleges* he began to experience suicidal or homicidal ideations because of Gregg's actions, the records reflect Henderson exhibited varying degrees of depression, anxiety, and hearing voices as early as January 2023. *See id.* at 22–23, 25, 30.

For these reasons, and after thoroughly reviewing and considering the briefing, the Report, and Henderson's objections, and having construed the evidence in the light most favorable to Henderson, the court concludes there is no genuine issue that Gregg acted with deliberate indifference to any serious medical need of Henderson's. The court thus overrules Henderson's objections and adopts the Report in full and dismisses Henderson's claim against Gregg.

## II.  Appeal of Magistrate Judge Decision Denying Motion to Amend, ECF No. 96

Henderson appeals the magistrate judge's denial of his motion to amend the operative scheduling order to allow additional discovery.  [*See* ECF No. 86.]  Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on non-dispositive matters.  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).  The objections must be filed and served "within 14 days after being served a copy" of the non-dispositive order.  Fed. R. Civ. P. 72(a).  Further, the court's review is governed by the "clearly erroneous" or "contrary to law" standard of review.  *Id.*  Only if the decision is "clearly erroneous or contrary to law" may the district judge modify or set aside any portion of the decision.  *Id.*  A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948).

Henderson moved to amend the scheduling order to permit additional discovery on June 21, 2024, over two months after discovery closed and nearly two months after Gregg filed her motion for summary judgment.  [*See* ECF No. 66.]  In support, Henderson broadly alleged that various SCDC actors conspired to obstruct his litigation efforts and denied him sufficient legal supplies.  He also alleged his failure to conduct discovery was because he "could not afford legal supplies," because he did not have an attorney, because he is mentally ill, and because he is subjected to prolonged lockdowns.  [ECF No. 66 at 3.]  Henderson largely reiterates these objections in his appeal.  [*See generally* ECF No. 96.]

Having thoroughly considered Henderson's objections, the court concludes the magistrate judge did not err in denying Henderson's motion.  The court entered its scheduling order on

January 30, 2024, which identified the deadline to conduct discovery as April 1, 2024. [*See* ECF No. 25.] Between that time, Henderson managed to file three submissions totaling approximately one-hundred handwritten pages. [*See* ECF Nos. 29, 30, 32.] At bottom, Henderson's contention that he could not conduct discovery because he did not have access to legal supplies is simply not credible.

Henderson's request for discovery in response to Gregg's motion for summary judgment does not alter the court's conclusion. Even if the court were to construe Henderson's request for additional discovery to respond to Gregg's motion pursuant to Rule 56(d), FRCP, Henderson falls far short of that rule's requirement. While he specifically identifies a need for discovery—to identify the officers to whom Gregg reported the incident so he can add them as defendants—the identity of the officers to whom Gregg reported is not a fact essential to his opposition to summary judgment. Likewise, his request for surveillance footage, *see* ECF No. 108 at 16, is immaterial because Gregg does not dispute that Henderson showed her a handful of pills.

For these reasons, the court overrules Henderson's objections to the magistrate judge's text order.

**III.     Motion for Extension of Time to Appeal, ECF No. 93**

Henderson also seeks to appeal the magistrate judge's denial of his request to stay this matter. [*See* ECF No. 93.] Out of an abundance of caution, the court construe's Henderson's extension request as an objection to the magistrate judge's ruling. Having carefully considered Henderson's motion and objections, the court finds no basis to grant a stay. As the magistrate judge noted, and as discussed above, Henderson consistently filed motions, replies, and/or responses in this case and his other pending cases, and continued to file motions, replies, responses, and other

documents after the magistrate judge issued his text order. To the extent Henderson needs to request extensions as to discrete deadlines, he is free to make such requests as he has done throughout this litigation. For these reasons, the court overrules Henderson's objections to the magistrate judge's text order.

## CONCLUSION

After thoroughly considering the parties' briefing, the Report, Henderson's objections to the Report, and the applicable law, the court overrules Henderson's objections to the Report and adopts the Report, ECF No. 106, in full. The court thus **GRANTS** Gregg's motion for summary judgment, ECF No. 47, and dismisses Henderson's claims.

As further explained above, the court also **DENIES** Henderson's appeal of the denial of his motion to amend, ECF No. 96. The court further construes Henderson's extension request at ECF No. 93 as an objection to the motion to stay, and the court **DENIES** that motion, as well.

This case remains committed to the magistrate judge for resolution of the remaining pending motions.

**IT IS SO ORDERED.**

February 11, 2025
Columbia, South Carolina

Sherri A. Lydon
United States District Judge